UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GABRIEL IVAN,

                      Petitioner,

-against-                                  22-CV-3999-LTS

INTERACTIVE BROKERS LLC,

                      Respondent.

---

### MEMORANDUM ORDER

       Petitioner Gabriel Ivan (the "Petitioner" or "Ivan") seeks vacatur of an arbitration award entered on March 2, 2022 (docket entry no. 4-2 (the "Award")), rendered by a panel of arbitrators convened through the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution Service (the "Panel") in favor of Respondent Interactive Brokers LLC (the "Respondent" or "Interactive Brokers").  (See docket entry no. 12 (the "Amended Petition" or "AP").)  Interactive Brokers filed a cross-petition, seeking an order confirming the Award. (Docket entry no. 21 (the "Response" or "Cross-Petition").)  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331.

       The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Ivan's petition to vacate the Award is denied.  Interactive Brokers' cross-petition to confirm the Award is granted.

### BACKGROUND

       The Award arises from a dispute between Petitioner Ivan, who is a sophisticated international investor and a citizen of Romania (see docket entry no. 29), and Respondent Interactive Brokers, which is a registered clearing and executing brokerage firm with citizenship in several U.S. states and foreign countries (see docket entry no. 28).

On March 1, 2012, the parties entered into a Customer Agreement, which set forth conditions describing the Respondent's authority to close and liquidate the customer's account following an event of default and included an arbitration clause. (Docket entry no. 4-3 (the "Customer Agreement") ¶ 25(B).) As to liquidation of an account following an event of default, the Agreement provides that:

> [Interactive Brokers] shall have the right, in their respective sole discretion, but not the obligation, to liquidate all or any part of the customer's assets or positions in any of the customer's accounts . . . at any time, in any such manner, and in any market, as [Interactive Brokers] deem necessary, without prior notice . . . to the customer in the event that . . . (4) an event of default has occurred; (5) this agreement has been terminated; . . . or (7) "whenever [Interactive Brokers] deem liquidation necessary or advisable for the protection of [Interactive Brokers].

(Id. ¶ 26.). The arbitration clause provides, inter alia, that "any dispute arising out of, or relating to, this Agreement . . ., any Transaction thereunder, or any of Customer's accounts shall be settled by arbitration" and that "THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD." (Id. ¶ 41.)

A dispute arose in February 2019, when Respondent notified Petitioner that, "based on information that has come to the attention of the Compliance Department," Respondent had decided to terminate its customer relationship with Petitioner and advised Petitioner to close his account by March 6, 2019. (Docket entry no. 4-4 (the "Claimant's Statement of Claim") at Ex. C (the "Account Closure Notice").) The notice stated that Petitioner could transfer or liquidate the positions in his account. (Account Closure Notice ¶ 1.) The deadline was subsequently extended due to issues regarding the liquidity of certain securities held in Petitioner's account. (Claimant's Statement of Claim, at Ex. H.) On March 7, 2019, and April 12, 2019, Respondent notified Petitioner that he was past the deadline for his account closure and advised him him that he "must transfer [his account] to another brokerage

immediately" and that "failure to comply immediately with this request could result in the liquidation of [his] account." (Docket entry no. 4-5 at Ex. E.)  Petitioner failed to transfer his positions, and, in March and April of 2020, Respondent liquidated Petitioner's assets.  (See id. at 12.)  Claiming that Respondent had liquidated his assets without authority and at a significant loss due to the market downturn, Petitioner commenced a FINRA arbitration proceeding against Respondent pursuant to the arbitration provision of the Customer Agreement.  (Claimant's Statement of Claim at 2.)

The arbitration panel received extensive submissions from the parties and, following the conclusion of a three-day evidentiary proceeding, rendered its Award in favor of the Respondent.  (Id. at 2.)  Petitioner now asks this Court to vacate the arbitration award and remand the case for further arbitration proceedings.  Petitioner argues that the arbitration Panel (1) exceeded its authority and violated public policy, 9 U.S.C. § 10(a)(3), (2) denied him fundamental fairness during the arbitration hearing, 9 U.S.C. § 10(a)(4), and (3) acted in manifest disregard of the law.

DISCUSSION

Subject Matter Jurisdiction

"The two general bases of federal jurisdiction are federal question jurisdiction, pursuant to 28 U.S.C. § 1331, and diversity of citizenship jurisdiction, pursuant to 28 U.S.C. § 1332."  Mitchell v. Frattini, No. 22-cv-2352, 2022 WL 17157027, at *2 (S.D.N.Y. Nov. 22, 2022).  Here, the parties both assert that the Court has diversity of citizenship jurisdiction, pursuant to 28 U.S.C. section 1332.  This Court, however, has an independent obligation to determine whether federal jurisdiction exists because "subject matter jurisdiction is an unwaivable sine qua non for the exercise of federal judicial power."  E.R. Squibb & Sons v.

Accident & Cas. Ins. Co., 160 F.3d 925, 929 (2d Cir. 1998).  Petitioner has declared that he is a citizen of Romania and a resident of Cyprus.  (Docket entry no. 29.)  Respondent, a limited liability company ("LLC"), takes on the citizenship of each of its members.  C.T. Carden v. Arkoma Assocs., 494 U.S. 185 (1990).  Respondent's member IBG Holdings LLC−itself an LLC that takes on the citizenships of each of its members−has both foreign and domestic citizenship.  (Docket entry no. 28.)  Because both Petitioner and Respondent have foreign citizenship, the Court cannot exercise diversity jurisdiction of this action.  See Bayerishce Landesbank v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012) ("[D]iversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." (internal quotations and citation omitted)).

    The Court can, nonetheless, exercise federal question jurisdiction over the petitions to vacate or confirm the arbitral award.  "The New York Convention provides that actions 'falling under the Convention shall be deemed to arise under the laws and treatises of the United States.'"  Mitchell, 2022 WL 17157027, at *2 (quoting 9 U.S.C. § 203).  The Convention applies to commercial, "nondomestic arbitral awards that a party seeks to enforce in the United States."  CBF Industria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 70 (2d Cir. 2017).  An arbitral award is "nondomestic" even when made in the United States if the proceedings have "some reasonable relation with one or more foreign states," such as involving entities that are not U.S. citizens.  9 U.S.C. § 202; see also Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia, 11 F.4th 144, 159 (2d Cir. 2021).  Because both Respondent and Petitioner are foreign citizens, their motions have a sufficient foreign nexus to fall under the Convention.  See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15 (2d Cir. 1997).  Therefore, the Court finds that it has jurisdiction of this action pursuant to 28 U.S.C. section 1331.

Standard of Review

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference[.]'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 103 (2d Cir. 2013) (quoting Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997)).  Thus, the party petitioning to vacate an award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).  A district court will enforce an arbitration award, "despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" Landy Michaels Realty Corp. v. Loc. 32B-32J Serv. Emps. Int'l Union, 954 F.2d 794 (2d Cir. 1992) (citation omitted).

A district court must confirm an arbitration award unless the party seeking vacatur establishes any of the limited exceptions listed in section 10(a) of the Federal Arbitration Act ("FAA") or demonstrates that vacatur is warranted under the manifest disregard of law doctrine, which can be applied in "exceedingly rare instances of egregious impropriety on the part of the arbitrators." Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85 (2d Cir. 2008) (internal quotation omitted) (describing the current doctrine of "manifest disregard" as a "judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA"); see also Hall Street Assocs. v. Mattel, Inc. 552 U.S. 576, 584-85 (2008).

Exceeding Authority/Violating Public Policy

Petitioner first argues that the Award is invalid because the Panel exceeded its authority and violated public policy. See 9 U.S.C. § 10(a)(4) (allowing vacatur "where the arbitrators exceeded their powers"). The Second Circuit has "consistently accorded the narrowest of readings" to section 10(a)(4), finding that "[a]n arbitrator exceeds his authority only by (1) considering issues beyond those the parties have submitted for his consideration, or (2) reaching issues clearly prohibited by law or by the terms of the parties' agreement." Anthony v. Affiliated Comput. Servs., Inc., 621 Fed. App'x 49, 50-51 (2d Cir. 2015) (internal quotation omitted).

Neither circumstance is presented here. First, the Panel acted within the scope of its power by reviewing issues submitted and explicitly assigned to it by the Customer Agreement. (See Customer Agreement, at ¶ 41 (requiring arbitration of disputes arising from the Agreement and ones relating to securities transactions in accounts held pursuant to the Agreement).) The Panel also had the authority to determine the validity of the contractual terms. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) ("[T]he issue of the contract's validity is considered by the arbitrator in the first instance.").

Second, contrary to Petitioner's argument, the Panel did not "essentially rewrit[e] the parties' agreement" by enforcing certain terms of the Customer Agreement. (Docket entry no. 6 ("Pet. Mem.") at 5.) Petitioner's argument is logically flawed; the Panel could not have rewritten the Agreement by applying its terms as written. In actuality, Petitioner seeks this Court's review of the Panel's legal determinations concerning the validity of certain terms in the Agreement. Disagreement with the arbitrator's legal analysis is not an authorized basis for vacatur under section 10(a)(4) of the FAA. See Barzelatto v. Spire Sec., LLC, 2019 WL

8889865, at *8 (S.D.N.Y. 2019) ("[A] federal district court does not sit as a court of appeals over an arbitration panel to correct errors of law."). Thus, Petitioner has failed to show that the arbitration panel exceeded its authority.

Denial of Fundamental Fairness

Petitioner also challenges the award under section 10(a)(3) of the FAA, asserting that the arbitrators violated fundamental principles of fairness by denying his motion in limine, overruling his repeated objections, and allowing Respondent to introduce new facts during the hearing. (Pet. Mem. at 19-21.) Under the FAA, a panel violates principles of fundamental fairness when it is "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. §10(a)(3). Here, Petitioner fails to identify any instances in which misbehavior by the Panel prejudiced his rights.

Arbitrators are accorded great deference in their evidentiary determinations and are not required to hear all possible evidence. Tempo Shain, 120 F.3d at 20. Generally, "procedural questions . . . such as which witnesses to hear and which evidence to receive or exclude . . . should not be second-guessed by the courts." Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 545 (2d. Cir. 2016). "[A]n arbitrator 'must give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" Tempo Shain, 120 F.3d at 20 (quoting Hoteles Condado Beach v. Union De Tronquistas Loc. 901, 763 F.2d 34, 39 (1st Cir.1985)).

Far from demonstrating that the proceeding was fundamentally unfair, the record of the arbitration proceeding shows that the Panel gave Petitioner numerous opportunities to present his arguments and, mindful of Petitioner's pro se status, explained legal standards and procedures to him.  (Docket entry no. 4-1 ("Hearing Transcript")).  Thus, Petitioner's argument for vacatur on the grounds of fundamental fairness is unavailing.

Manifest Disregard of Law

Petitioner also argues that the Panel manifestly disregarded applicable statutes and legal principles in making its determination.  In addition to applying the statutory grounds for vacatur under the FAA, courts may permit vacatur of an arbitral award under the doctrine of manifest disregard of law, but "its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent[.]" Duferco, 333 F.3d at 389.  "Mere error in the law or failure on the part of the arbitrator to understand or apply the law is not sufficient to establish manifest disregard of the law." Yusuf Ahmed, 126 F.3d at 23 (internal quotation omitted).  Indeed, the Court must confirm an arbitral award if there is "even a barely colorable justification for the outcome reached."  In re Andros Compania Maritima, S.A., 579 F.2d 691, 704 (2d Cir. 1978).

Here, the arbitration panel rendered no explanation for its Award determination and was not required to; "the failure to state the reasons for an award is not a basis for vacatur if a ground for the arbitrator's decision can be inferred from the facts of the case."  Max Marx Color & Chem. Co. Emps.' Profit Sharing Plan v. Barnes, 37 F. Supp. 2d 248, 254 (S.D.N.Y. 1999).  When no explanation for the arbitrator's decision is rendered, "a reviewing court can only infer from the facts of the case whether the arbitrators appreciated the existence of a clearly

governing legal principle but decided to ignore or pay no attention to it." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12-13 (2d Cir. 1997) (internal citation and quotations omitted).  The Court may infer manifest disregard of law only when the error is "obvious and capable of be being readily and instantly perceived by the average person qualified to serve as an arbitrator." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986).  Here, there is no basis in the record for an inference that the Panel intentionally disregarded clearly applicable law when making in its determination.  The record provides a colorable justification for the outcome reached under the clear terms of the Customer Agreement, which authorized the Respondent to close and liquidate Petitioner's account after an event of default.

    Therefore, the Court finds that Petitioner has failed to demonstrate that the Panel acted in manifest disregard of the law.

<u>CONCLUSION</u>

For the foregoing reasons, each of Petitioner's arguments for vacatur fails. The Court therefore denies Petitioner's motion to vacate the Arbitration Award, and grants Respondent's cross motion to confirm the Arbitration Award. This Memorandum Order resolves docket entry nos. 12 and 21. The Clerk of Court is respectfully directed to enter judgment accordingly and close case no. 22-cv-03999.

SO ORDERED.

Dated: New York, New York
August 25, 2023

/s/ **Laura Taylor Swain**
LAURA TAYLOR SWAIN
United States Chief District Judge